Good morning. Ben Coleman on behalf of Francisco Arias, the appellant. Given the government's concessions— Well, I want to start right there with you. I know the government said they weren't trial counsel, but I don't necessarily— I'm not sure I agree with some of the concessions in terms of I would start with the concept of it doesn't seem to. So I don't think we necessarily have to accept concessions by the parties, so I need to be convinced on some of that. I'm only speaking for myself, but certainly on areas of involving circumstantial evidence, to me it seems like the prosecutor conceded way too many things that circumstantial evidence covers. So don't necessarily assume that I agree with your—don't overlook the concessions. Okay. I'll try to answer the questions as they come. Well, okay. Mr. Arias, I guess from the standpoint, relies on Lapeer, right, for the argument that the district court erred in not giving specific unanimity instruction. However, in that case, Lapeer was charged as the only defendant who allegedly conspired independently with his two drug suppliers, whereas here Mr. Arias allegedly conspires with Cortez Zelaya to distribute drugs to other co-defendants. Why doesn't the presence of a co-conspirator distinguish this case from Lapeer? Right. Well, I guess there are a few things. One, we— First, we're dealing with plain error, right? Correct. And that was the case in Lapeer as well. The—I guess there are a few things. I'm going to assume for the moment, although I disagree with this assumption, that the government proved the conspiracy between Arias and Cortez Zelaya. I'll assume that, although I disagree, and I'll get to that later. Okay. They're conspiring in Las Vegas. Let's assume they're conspiring. What the government needs to prove for the conspiracy in Count 1, which is a conspiracy in Guam, is that they conspired with somebody in Guam who committed an overt act in Guam. So even if you want to assume that those two conspired, although I don't think the evidence was particularly strong that they did, but even if you assume that they did, that still does not get the government around the multiple conspiracy problem because they haven't proved the conspiracy in Guam that's alleged in Count 1. Isn't the question whether there's really an opportunity or a likelihood that the jurors sitting through this trial really were confused? Correct. They have—I'm sorry. Right? And it just seems to be really tough for us to figure out whether the defendant's substantial rights were affected. I'm just looking at prongs three and four of the plain air test, and so I'll tell you my problems. One, it's really tough for us to know—it's a pretty lengthy trial—to know the likelihood that the jurors were confused, particularly given the government's concession. The government was there. We weren't there. And the other part of the problem is on prong four, which seems to me to be uniquely difficult, concerned about undermining the public reputation in judicial proceedings given that there's another defendant whose case came out differently on this issue. Correct. And let me start with prong four, if I could. Number one, the government never argued prong four in their brief, so I think they've waived any argument as to prong four. But even if the court excuses the waiver as to prong four, yes, we have another defendant who got relief on this same issue, so I think the inconsistency arguably would show that prong four is satisfied. The court wouldn't want to have inconsistent results. But also, when you look at the fairness and integrity of the proceedings, I have not challenged the two substantive counts. Mr. Arias has already served over five years in prison. If the government does not go forward on a retrial on the conspiracy count, he's still subject to up to ten years in prison. He has no prior record. I don't think if the court reverses the conspiracy count that there would be such a fundamental disruption of the integrity of the court when Mr. Arias is still subject to up to ten years in prison for a first offense. I'm not sure this is your best argument. These are very serious charges, and the conduct struck me as very, very serious. It certainly struck the district court as very, very serious. There's no doubt about it. A ten-year sentence for a first-time offender is a very serious sentence. What was so confusing about the trial, getting back to Judge Callahan's question, prong three, we have to decide whether the defendant's substantial rights were affected. I think there are differences. I pronounce it lapier, but who knows. I do, too. Between this case and that case, because in this case, just for starters, the alleged co-defendants were identified, and the jury certainly had testimony that broke down the components of the rim, if you will. So why should we decide that there was a risk of confusion? The co-conspirators or alleged co-conspirators were identified in the indictment, but the way the case was prosecuted and instructed to the jury, there was no way for this court to tell whether the jury agreed as to which group Mr. Arias conspired with. And so the fact that there are names in the indictment, and we've argued that actually creates more prejudice because the jurors are confused. They believe that – But why isn't it just one giant conspiracy? I mean, Mr. Arias and Mr. Cortez Zelaya, they headed up a drug distribution scheme, and how isn't that just one conspiracy? Well, I think as the government concedes, and I know Your Honor's not accepting it, is that these four groups in Guam, there's no connection between the four groups. It's like Lapierre, where you had Mr. Lapierre had a supply and sell arrangement with one group, then later on he had a supply and sell arrangement with another group. It was the same thing here. If you look at the four groups, the first group, the first period of time, 2010 to 11, is Norman Concepcion. Lapierre was the only defendant, and then he allegedly was conspiring with two different drug folks. But here, the conspiracy, the argument would be that Mr. Arias and Mr. Cortez Zelaya are the ones that are conspiring. Correct. Again, I don't think the evidence was that strong about that, but if you assume that's the case, that still does not sustain count one. The conspiracy in count one is a conspiracy in Guam. That means they have to conspire with somebody in Guam. It's not good enough for Cortez Zelaya and Arias to conspire in Las Vegas. That doesn't get you a prosecution for conspiracy in Guam. And the way count one was alleged, because it had to be alleged that way to get venue over them in Guam, was that they conspired with these groups in Guam. So they have to show that Mr. Arias conspired with a Guam group. And that's where the problem breaks down, because they have four different groups, and we don't know whether the jury, the six jurors found that he conspired with group one, and the other six found he conspired with group two, or three found group one, three found group two, three found group three, and three found group four. What's your best evidence if we assume the first plain error prong that the district court, that it was plain error not to give the unanimity instruction? Is there anything that suggested the error? What's your best argument that it affected the outcome of the trial? Well, it affected the outcome of the trial, because we have the test in our lape here is, is there a possibility that the jury did not return a unanimous verdict, that they agreed on the exact same conspiracy? And we have that problem here, particularly because with some of these groups, the government presented very weak evidence as to whether anything moved beyond a buyer-seller relationship between Mr. Arias and the various groups in Guam. For some of them, they basically just had Mr. Arias selling drugs to somebody in Guam. Were you trial counsel? No, I'm from California. Oh, okay. So what was trial counsel doing there, just being a potted plant? I mean, obviously we're on plain error, and I don't think he made the proper objections and made the proper arguments. But I still think we succeed on plain error, because lape here says there was error and it was plain. Let me ask you about the conspiracy to commit money laundering there, that in 18 U.S.C. section 1956 defines proceeds for money laundering to mean any property derived from or obtained or retained directly or indirectly through some form of unlawful activity, including the gross receipts of such activity. The proceeds includes the receipts from the sale of drugs. How is there insufficient evidence to support the jury's verdict here, if you count circumstantial evidence here? I mean, you don't prove these cases with direct evidence. People don't go, oh, these are the drug products. There's a lot of circumstantial evidence here. So I don't understand the government's states that there's no concession. I don't understand the government's concession there. It's because it's a specialized money laundering charge. It's a conspiracy to commit promotional money laundering. And the cases say that simply making a payment for drugs is not promotional money laundering, and that's what the government has conceded. They did not prove promotional money laundering. They may have been able to proceed on a different money laundering statute had they charged a different money laundering statute, but that's not the offense that they charged. And that's why their concession is well taken. Okay, but what about the definition of proceeds of the section that I just – it defines proceeds for money laundering to mean any property derived from or obtained or retained directly or indirectly through some form of unlawful activity, including the gross receipts of such activity. Right, and the claim here is not a challenge to the proceeds definition. That's not our argument, and that's not what the government has conceded. The argument is that they did not prove conspiracy to commit promotional money laundering. You have to prove the source of the funds. Your argument is they didn't prove the source of the funds. Is that right? No, the argument is that they did not prove that the funds were used to promote the unlawful activity. We're saying the same thing. Yes. There's various types of money laundering, Your Honor. They went down a promotional money laundering charge. They concede that that was the incorrect charge. They shouldn't have charged promotional money laundering. They may have been able to prove a different money laundering offense had they charged that offense, but they didn't. They went under the promotional money laundering. So that's why I think their concession is well taken on that count, Your Honor. Did you see the testimony at ER 174? Brian Quintada, I hope I'm pronouncing that correctly, was asked, where did you get the money from? And then the response is from the sale of drugs. Maybe if you could just take a . . . Maybe when you come back up, you'd have an opportunity to take a look at that. ER 174. Right. I just have one other question from my part, which is the four-level upward adjustment for the aggravating rule, and I understand your argument to be that this was improperly applied or shouldn't have been warranted here because your client was in Nevada thousands of miles away. Yes, that's part of it. And then also under the Fourth Circuit decision in Slade and the Seventh Circuit's decision in Weaver, someone who sells drugs and even large quantities of drugs repeatedly to a repeat customer who then sells the drugs further down the chain is not subject to an aggravating rule, even if you want to somehow say that the buyers are selling for Mr. Arias, let's say. Your time is ticking, so I just want to tell you that my read of the record is that there is ammunition here for the government to argue that your client from Nevada did direct operations, at least to the extent of telling people where to pick up packages of drugs, where to send the money back. And then there's one individual in particular in Concepcion, I believe, who testified about getting involved in this really to defend, again, loose paraphrase, to defend his nephew, to pay his nephew's debt, and then his nephew was very directly threatened, which sounded like direct control to me. Okay. On the aspect of where to send the drugs or where to send the money, I mean that virtually every sale there's a buyer and a seller. He wasn't the buyer and seller. He is directing operations or activities that are being undertaken by other people, and arguably because they're doing this several thousand miles away, that shows that he did have control. Well, I guess. Following his directions, in other words. Correct, and they're, well, correct in the sense that he's saying I'm going to send, he's the one who chooses where to send the drugs because he's the one, well, they're telling him where to send the drugs, actually. They're the ones who are telling him, you know, send it to this person at this address, and then he sends the drugs there. He's then saying to them, here's how I want you to pay me, and they pay him. That's the way it always works in a buyer's sale. Just go quickly. For me, the toughest evidence for your client is the evidence to the effect that Inconcepcion testified that he got involved in this because his nephew was threatened. He needed to pay back this debt. One of his packages were intercepted. He was told, I think by your client as a testimony, that he then had to pay that back, and then he took additional steps. So that sounds like pretty tough testimony for your client. Could you respond? Well, I think the Weaver case from the Seventh Circuit, with respect to the last point, says that if the buyer, the fact that the buyer would still be liable to the seller if he sells it at a loss or there's a problem and the package is lost, that tends to cut against an aggravating rule of funding. Yes, but in this case, what he's doing, he's paying off his, it's not a regular buyer-seller relationship, he's paying off his nephew's debt. Yeah, and he says he's in fear. Right, and he also made $75,000. Well, he testified that he personally profited $75,000, but he also testified that $75,000 was earned after Mr. Arias increased Mr. Concepcion's debt responsibility, and so why can't you make the argument that he was still under fear of Mr. Arias and thus received little or no compensation? I mean, it's a little more nuanced than just he was just a seller. I mean, that he was just in there. I mean, because you have the threat to his nephew, you have the amount being upped, and so why isn't he still in fear? Well, once the debt is paid, I mean, he could have walked away, but he wanted the $75,000, and it was probably more, but let's assume we'll give him the benefit of the doubt. I mean, he continued to sell the drugs. In a typical buyer-seller, the debt was paid off long. I mean, he made much more money than the debt was. I think the debt was $12,000, and whatever his motivations were, the fact of the matter is that Mr. Arias did not tell him how much to sell the drugs for, who he should sell the drugs to, and the reason why Norman Concepcion was allowed to make as much money as he did is because he set his own terms for how he was going to sell the drugs in Guam, and there was really nothing that Mr. Arias could do about it from Las Vegas. Thank you, counsel. We'll give you some time for a break. Thank you. Good morning. May it please the Court. Garth Backey for the United States. Just to follow up on the leadership enhancement, which the government doesn't believe the court needs to resolve. It could revand for plenary resentencing. But in the PSR, which I was unobjected to in paragraphs. You're hard to understand. You're talking and mumbling into your beard again. I think it's because of my small mouth, not because of my beard. But I do have a mumbling problem. Your Honor, paragraph 18, it says, Arias told Concepcion to accept mail packages containing drugs, methamphetamine, sell the drugs in Guam, and send the proceeds to him in Las Vegas. I mean, those are instructions. That's leadership, and again, it was all based on threat. The government does not think that that needs to be reached, but should the court feel inclined to reach it, it was certainly not a clearly erroneous finding by the district court. So turning to unanimity, LaPierre says that if it's enough that there's a genuine possibility that the jurors were confused, why isn't there a genuine possibility that the jurors were confused in this case? Under my reading of LaPierre, that question, if answered in the yes, satisfies the error prong. So LaPierre's saying, if there's a genuine possibility of jury confusion, then the court must sua sponte give a specific unanimity instruction. So if you say, yes, there's a confusion possibility, then you've got to give the instruction. If you don't, it's error. We still have the third prong. We still have prejudice affecting the outcome. So how do we know that it didn't affect the outcome? We don't, do we? If you don't, then the appellant loses because it's a burden. I mean, I don't think you should speculate. It should be proven to you or at least argued to you by the appellant. Because, again, plain error standard, we all know, is a hard burden to meet, especially the third prong. All right, sorry. Now I'm mumbling, right? Not speaking into the microphone. Didn't the government concede this in the co-defendant's case? Yes, Your Honor. That was a different argument. That was a prejudicial variance, and we conceded that she suffered an improper evidentiary spillover. We do concede. If you read the indictment, it's almost as if we charged a buyer-seller conspiracy and just didn't note that. You were just getting to the good part where you said, we concede, and then you interrupted yourself. What is the scope of your concession, please? In this case or the other case, Your Honor? Well, both. Yes, you're going to have to speak to both. The Concepcion case, we conceded that we did not prove the single conspiracy alleged in the indictment, that we proved multiple conspiracies, that she suffered a prejudicial variance, in particular evidentiary spillover, because we conceded she shouldn't have even been sitting next to these guys at their trial because all they were were her sellers. There was zero evidence that they took any interest or further actions with her distribution. It was give me drugs, I pay you. You said sellers. You meant suppliers, right? Well, buyer-seller still applies in this context. Okay. So I shouldn't have interrupted. Okay. That's your concession in that case. And then here? That we once again proved multiple conspiracies, not the single conspiracy as alleged in the indictment. But that she did not suffer prejudice. I think it's a different argument. But she did not suffer prejudice because there is no circumstance imaginable where the jury would come back and not find that Arias conspired with Cortez Zayala to distribute methamphetamine. That is, I mean, again, it's his burden to prove that that didn't happen. But if the jury finds that those two conspired, then it is legally and constitutionally sufficient. How do we know what the jury decided? Well, I think, again, I think we would have to entertain arguments by the appellant as to what was possible. They don't seem to – Well, it's possible. We've got four different conspiracies and you argued four different conspiracies to the jury. There's no question about that, right? Yeah. Well, no, Your Honor, actually, I believe we argued as one conspiracy, which is incorrect in hindsight. Well, you also – If there is one conspiracy between Arias and Cortez Zayala, then why do you need the unanimity instruction? Because they could have – because of the other activities that are occurring on Guam. The four groups on Guam, other than Norman Concepcion,  Couldn't you argue very clearly to the jury about the four separate groups in Guam? If you read the indictment, it – I'm not talking about the indictment. I'm talking about whether the jury was confused. So just forgive me for interrupting, but this is a really critical point. It's very tough for us to say after the fact whether the jury was confused or not when the government's made this concession in a different case. I'm clearly concerned about that. And my read of the record – again, it's a cold record – but it looks to me like the jury – that the evidence rolled out so that the jury heard about four separate groups. No? Am I wrong about that? Four separate groups that have no knowledge or interaction with each other supplied by Cortez and Arias, who, except for Norman Concepcion, had no further relationship with this distribution on Guam, other than supplying it. Okay. The commentary you just filled in fairly in response to my question I don't think is anywhere in the closing. I don't think those words were articulated to the jury about these being four separate groups. The separateness of them. No connection. I don't think that was presented to the jury, was it? We've had to make a lot of concessions. This is not . . . I'm not trying to give you a hard time. We talk a lot about expecting more from the government, and it strikes me in some instances here, really, you're to be commended for taking a stand-up position. So don't get me wrong. But I am struggling to understand what your position is on this point vis-à-vis this other defendant. We would say that the best we've proved is a conspiracy between Cortez, Zayala, and Arias. Not a conspiracy involving anyone further than that. At least not how we briefed it. But arguably, maybe Norman Concepcion. But the other groups, which are called groups in the indictment, that is not a conspiracy. Again, going back to the buyer-seller rule, their relationship was just buyer-seller, which is insufficient to establish a conspiracy distribution. So what strikes me, again, not to give you a hard time, but it strikes me you're giving me a lawyer's response about what the indictment said, what the law requires. And I'm trying to imagine what the jurors thought sitting in the jury box, how the evidence rolled out in front of them. I think based on the arguments that they thought, that everyone was one conspiracy. Okay, what's your strongest support for that? Where would I find that? Is it opening, closing? Do I have that here? I think when he talked about four separate groups, I still think he was not saying four separate conspiracies. The indictment is... You're totally confusing me, I have to say. Okay, so you're saying there's no connection or knowledge between the four groups of co-defendants in Guam, right? And conclude there cannot be a single overarching conspiracy. So if to prove a conspiracy, there must be an agreement with at least one other person, in what way was the agreement between Mr. Arias and Mr. Cortez Zelaya not enough to show a single overarching conspiracy? I don't... So... I apologize for my confusion, but I think it was like a 16-defendant case. They all could have gone to trial at the same time, and they would have been sitting there next to each other when they shouldn't have been.  to distribute methamphetamine between Cortez Zelaya and Arias, which is, in our opinion, legally and constitutionally sufficient. But, like, getting back... So, but you conceded error. You said that... So if that was sufficient, then why is it plain error not to give the unanimity instruction, if that's a conspiracy that we're talking about? We conceded it was error in our briefing to not give the instruction. We said prongs one and two... So what's the conspiracy here? What is the conspiracy? The conspiracy between Arias and Cortez Zelaya to distribute methamphetamine. Okay, that's one conspiracy. So why do you have to give... So what would the unanimity of instruction have said? Who was part of the conspiracy? If you find the defendant guilty, who is the members of this conspiracy, for example? And so some of them could have said, oh, it was the Carina Concepcion group. And some of them could have said, no, it was the Quintanilla group. But in no circumstance would it not include Arias and Cortez Zelaya. Well, if that's enough for the conspiracy... Do you need to have someone in Guam to have... Do we have to know which group in Guam they conspired with? For venue purposes? Or to uphold the verdict? I think... Your argument's basically a Venn diagram, isn't it? You're saying we have one nucleus that they could... They had to agree on, and then they have these other possibilities. Yeah, we have the hub. They're the hub. Right. They're spokes, but there's no... And their argument is, no, they could have found different conspiracies, and there's no... And Arias didn't conspire even with Cortez. I think what they're primarily arguing is that perhaps Cortez and Arias conspired, but then we have a venue problem. Well, that was never raised at district court. It was never raised in an opening brief. It's raised one sentence in reply before we say it's waived. No, I think his argument on venue was that's the way you had to charge it, and he's confining you to the charge and the indictment, if I understood his argument. I don't think he was making a venue argument. He was explaining why it would have to be charged differently and at a different venue if you had charged... I think he was just... He wasn't arguing venue. He was just explaining why it had to be charged. I think it could have been charged... Cortez and Arias conspired to distribute methamphetamine, and I think venue would have lied in Guam as well because of communications, the sending of money, and that's where the drugs ended up. This is not like the case that they cited, which is actually the opposite, but I think venue would have been fine in Guam, but properly charged, it should have been just them two. How does the strength of the evidence play in here in evaluating whether this affected... whether anything that the air affected the outcome of the trial? Well, the strength of the evidence as to the conspiracy between Cortez, Zayala, and Arias was strong, and that should be able to carry the day and foreclose any prejudiced argument. But you said it's his burden to show that... The third problem is... I mean, I didn't... Sorry. I mean, I'm arguing why he cannot... prevail on the third problem. What about the insufficiency of the evidence on the money laundering? Your Honor, I don't know if it would be... We conceded it, and I don't know if it's appropriate to try to defend it. Well, you should. If you conceded it, of course you should try to defend it. If you think that that was the right decision, but is that giving all... It was a jury. There was a lot of circumstantial evidence. Was it giving all inferences in terms of... Was there instructional error on that issue? Instructional error? Well, was the jury improperly instructed as to what they had to find on count two? I think Mr. Coleman fairly characterized why we made our concession. Well, did the jury get the wrong instructions? Yes, from the prosecutor, but no, not as a legal matter. No, did the court give the wrong jury instructions? No, Your Honor. Okay. So if you consider all inferences in favor of the verdict, why is it insufficient? I may speak to why. We conceded that same point in Corina Concepcion's case, and the reason was there was zero evidence that it was drug proceeds. In fact, all the mailings or wire transfers in that case occurred before any drugs were shipped. It was just a matter of chronology. No one testified in that case. Corina gave me the drug proceeds, and I shipped them back to Arias. They kind of used a mope to make payment, and I think Mr. Coleman cites the law correctly. Where did the money come from, then? I mean, where did it go? You have the whole thing going on. I mean, inferentially, can't you find there's evidence that they're proceeds? Perhaps, Your Honor. I think in this case, there are arguments, like I would say, close to the line of whether we should concede or not. And in this case, we veered on the side of conceding because, to be honest, this isn't our finest hour. This wasn't the best case. It wasn't probably the best charge. So instead of advocate, we're right on that line, and we veered on conceding. But I guess from the standpoint, when you go to a jury trial and there is a jury verdict and there's a lot of evidence that's put on, if you concede, well, insufficient evidence means it can't be retried. And if you're an appellate lawyer, you know that you have to consider all the evidence, direct and circumstantial, in support of a verdict. And there's a reason for that. So I just don't see where there's insufficient evidence. But if what you're telling me is you just think, like, we all messed up between both of them, and so that's the fairest way to make this happen, that doesn't make me entirely comfortable in terms of whether there's insufficient evidence or not. I understand, Your Honor, and the Court is obviously not required to accept our concession. Well, let me ask you, getting back to the unanimity issue, because accepting your concessions, that's where we are in terms of effect on the verdict. And what I look at in these kind of cases is the closing argument and what people did. And the closing argument, as far as I read it, and you were trial counsel, I know that. I mean, you're talking about a lot of different people doing a lot of different things. And, of course, you had a lot of defendants and a lot of people involved in this thing. But if you just take different interactions where you're talking about it, it certainly seems possible that they were talking about different conspiracies. Do you think that's right? Yes, and I don't know if that helps or hurts me. I do think that if they were to have to set out who do you think you conspired to, the answers would have probably been different. But it would always have the same two. But what? I'm sorry. It would always have Cortez, Zayala, and Arias. That would always be there. And then they might disagree about other groups that existed on Guam. So are you saying we should reverse count one? No, we're saying count one should stay. It seems like you're getting pretty darn close. He was just being honest in his answer to the question. All right, thank you, counsel. I have another question. I think I agree with you on your grouping concession. So if that was wrong, if this goes back, what's in play? Everything? Well, obviously, your concession, the money laundering's out. If I agreed with you that it didn't affect the outcome but it had to go back on grouping, because the sentence on count one is the big one, right? Yes, Your Honor. So can the court revisit that? I don't think there's any need to revisit anything. Well, can the court? If it goes back on the grouping, can the court revisit the sentencing on count one? Yes. Yes, because the law regarding the unbundling, it would be plenary resentment. So, I mean, arguably, I'm just trying to think, I'm just trying to understand this hypothetically. If there were an infirmance on count one but there were a reversal on the grouping and then if it was insufficient sentence on count two, which is a 20-year sentence, right? Yes, Your Honor. So would the court just resentence on everything? What's the range for the court on count one? I don't know, but I'm pretty certain it's not life, because we've made concessions and we're not intending to argue if this goes back. It's the grouping as well as the threat with no payment. There was testimony that he got paid. So there are a couple of things that are in play. He's not going to have the same guidelines. But then if we don't agree, if the panel doesn't agree and reverses on count one, then you don't have that conviction. You have to retry on that, right? And if we agree with your concession on count two that there's insufficient evidence, you can't retry that. So you would have to retry count one, right? Yes, if the prejudice satisfies the third prong, then yes. We could and would retry that count. Thank you, counsel. We'll give you three minutes for rebuttal. I want to just focus on prong three of plain error with respect to the multiple conspiracies. And, Judge Callahan, what I really want to focus on is that prong three is not a sufficiency of the evidence test. If they presented sufficient evidence that Cortez Zelaya and Ari is conspired, then we can't satisfy prong three. It's not sufficiency of the evidence. This is the standard from Lapierre. The government argues that any violation of Lapierre's right to unanimous verdict was not plain error because there was not a high probability that the error materially affected the verdict. That seeks to frame the plain error analysis as requiring Lapierre to show that but for the error, a jury would likely have acquitted him. However, that is not the proper way to analyze whether Lapierre's substantial rights were violated in this context. Lapierre had a constitutional right to unanimous jury verdict, having determined that the possibility of jury confusion about what facts formed the basis of his conviction was genuine, we are not free to speculate about what his jury might have concluded had it been properly instructed. That's the third prong test. So the evidence that Ari is and Cortez Zelaya conspired was not strong. They had evidence that Cortez Zelaya sent drugs from Las Vegas. They had evidence that Ari is sent drugs from Las Vegas. But they didn't have strong evidence that they were working together. But even assuming the evidence was sufficient that they were working together, that does not mean that I can't satisfy prong three. Lapierre, that's the standard for prong three under Lapierre, and the government has basically conceded that there was jury confusion. They now have again conceded that with respect to three of the four groups in Guam, they presented insufficient evidence of anything more than a buyer-seller relationship. So we have all these different groups. We have them conceding that their evidence was insufficient as to several of the groups. There is a likelihood of jury confusion, and the count should be reversed. One final thing on just about the permutations of what happens. If the court were to affirm count one, despite this argument... Right. I know you're not conceding it. Right. There are four levels that they've conceded under the guidelines. We've also argued the aggravating role, but let's put that aside. So the sentence and guidelines range drops from life in prison, which was level 44 where they had them, all the way down to, I think it's more like in the neighborhood of 25 years, something to that effect. So the guideline range is going to be substantially lower, even if you were to affirm on count one. That's why the resentencing would be so important as to count one. But it's our position that the court should reverse count one. If the court does reverse on count one, then the government has... Just humor me. Yes. If it was an affirmance on that, and the grouping goes, that that was wrong, then how much does... Tell me again how much that changes? There are two that they concede. They concede the two points for grouping and the two points for under 2D1.1B15, that those need to go as well. So it's four points total. So it goes down from a level 44 to a level 40. The second one being use of fear. Yes, because Norman Concepcion testified that he made $75,000. So when those four levels go, I don't have the actual range in front of me, but I'm estimating it's at about 25 years. So it drops from a life guideline range to 25 years, which is obviously a substantial... I mean, Mr. Arias is about 43 years old right now, so he would at least be able to get out of custody if the court were to follow the guideline range. But we're asking the court to reverse count one. If the court reversed count one, then the government has two options. Option one is they can just go forward with resentencing. He's still subject to up to 10 years in prison. Let's assume he would get to 10 years. That's still a substantial sentence for a first-time conviction. But, of course, the government could seek to retry count one, and then they're going to have to figure out how they're going to do that with all these different groups and everything, but they can try to do that as well. I hope they don't, but that's their decision, of course. Thank you. Thank you, counsel. Thank you both for your arguments today. The case just arguably submitted for discussion.
judges: Thomas, Callahan, Christen